O
JS-6

cc: order, docket, remand letter to
Los Angeles Superior Court, No. BC 487171

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTAY HYDRAULICS, INC., <br><br>                    Plaintiff, <br>     v. <br><br> SAFETY-KLEEN SYSTEMS, INC., <br><br>                    Defendant. | Case No. 2:12-cv-07357-ODW(VBKx) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [22]** |

On June 25, 2012, Plaintiff Otay Hydraulics, Inc. filed this putative class action against Defendant Safety-Kleen Systems, Inc. in California state court. Otay Hydraulics alleged that Safety-Kleen breached contracts with Safety-Kleen's California customers by allegedly charging unauthorized fuel surcharges and excessive late-payment fees. Defendants removed the action to this Court, and the Court remanded the action on its own motion for lack of jurisdiction. (ECF No. 9.) But on appeal, the Ninth Circuit vacated the order. (ECF No. 17.)

On April 15, 2013, Otay Hydraulics moved to remand the case, arguing that Safety-Kleen failed to establish that the amount in controversy exceeds $5,000,000 as required by 28 U.S.C. § 1332(d)(2)—an issue the Ninth Circuit declined to address on appeal. Safety-Kleen failed to oppose Otay's motion by its April 22, 2013 deadline. *See* L.R. 7-9 (opposing papers due 21 days before the designated May 13 hearing date). After carefully considering the Notice of Removal and supporting declarations,

the Court agrees with Otay Hydraulics and therefore **REMANDS** this case to Los Angeles County Superior Court.

Federal courts are courts of limited jurisdiction, only having subject-matter jurisdiction over matters authorized by the Constitution and Congress. *E.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a suit to federal court if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). But a "strong presumption" exists against removal; as a result, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (alterations omitted) (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006)). A removed action must be remanded to state court if the federal court lacks subject-matter jurisdiction, 28 U.S.C. § 1447(c), and the Court must resolve "all ambiguity in favor of remand to state court." *Hunter*, 582 F.3d at 1042; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Here, Safety-Kleen asserts that diversity jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there is minimum diversity and the amount in controversy exceeds $5,000,000. (Not. of Removal ¶ 1.) Safety-Kleen does not assert federal-question jurisdiction under 28 U.S.C. § 1331.

Plaintiffs are the masters of their complaints and may artfully plead their complaints to avoid federal jurisdiction. *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998–99 (9th Cir. 2007). When, as here, a plaintiff in a putative class action has not pleaded a specific amount in controversy, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *Abrego*, 443 F.3d at 683. In satisfying its burden, a defendant must "set forth the underlying facts supporting its assertion that the amount in

/ / /

controversy exceeds the statutory minimum." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

**A.     Damages**

Safety-Kleen argues in its Notice of Removal that the total amount charged by Safety-Kleen to the putative class members during the four years preceding the filing of this action is $5,281,406. (Not. of Removal ¶ 13.) Safety-Kleen calculates this figure by adding together the amounts it charged—but did not necessarily receive—for fuel surcharges and late-payment fees, which are $3,527,781 and $1,753,625, respectively. (*Id.*)

Otay Hydraulics disagrees with this computation, arguing that its putative class definition only includes persons and entities residing in California who actually *paid* fuel surcharges and late-payment fees. (Mot. 2; *see also* Compl. ¶ 9.) Otay Hydraulics points out that Safety-Kleen only collected $3,239,822 in fuel surcharges and $317,215 in late-payment fees, which results in a sum of $3,557,037.

Since Otay Hydraulics only proposes a class of persons and entities residing in California who paid the fuel surcharges and late-payment fees, the amount Safety-Kleen charged but did not necessarily receive bears little on the amount-in-controversy computation. In its removal papers, Safety-Kleen admits that it only collected $3,557,037 in questioned fees—far less than the $5,000,000 jurisdictional floor.

Like the proverbial spaghetti on the wall, Safety-Kleen next throws out numbers in the blind hope that some of them will stick to establish the alleged amount in controversy. Safety-Kleen calculates the amount it collects each month from the fuel surcharges and late fees and multiplies those amounts by 19.7, the median number of months a case took to go from filing to trial in the Central District of California in 2011. (Not. of Removal ¶ 14.) Safety-Kleen accordingly determines that it will collect an additional $1,389,835 in fuel surcharges and $689,500 in late-payment fees during this litigation. (*Id.*)

Otay Hydraulics responds that while civil cases took an average of 19.7 months to go to trial, they only took 5.7 months to go from filing to disposition. Based on that figure, there is only an additional $405,550 in controversy—still below the amount Safety-Kleen needs to reach for federal jurisdiction to attach.

There are several problems with Safety-Kleen's crystal-ball arguments. First, the putative class definition only includes those persons and entities who "paid" the fuel surcharge and late-payment fees, not those who *will* pay them going forward. Second, Safety-Kleen assumes that every class member will continue to pay these questioned charges even after they are put on notice of their disputed legality. Third, even assuming Safety-Kleen continues to collect these charges, at 5.7 months until disposition—the more reasonable time estimate—the amount in controversy ($3,962,587) still falls below $5,000,000.

**B.    Injunctive relief**

If a defendant's cost of complying with an injunction would exceed the jurisdictional floor, that compliance cost represents the amount in controversy for jurisdiction purposes. *Rodgers v. Cent. Locating Serv., Ltd.*, 412 F. Supp. 2d 1171, 1180 (W.D. Wash. 2006).

Safety-Kleen values the injunctive relief Otay Hydraulics seeks, namely, prohibiting Safety-Kleen from continuing its allegedly unfair, illegal, and fraudulent business practices in the future. (Compl. 17.) Safety-Kleen's Finance and Accounting Systems Manager Ron Berdinsky "understand[s] and assume[s] that if Safety-Kleen were prohibited from assessing a 'fuel surcharge' to its customers, Safety-Kleen would need to increase its service price." (Berdinsky Decl. ¶ 6.) Berdinsky also "assume[s] that Safety-Kleen would lose some of its current customers as a result of that potential price increase." (*Id.*) He estimates lost sales of $1,780,000 within one year of a potential injunction.

But the Court "cannot base [its] jurisdiction on Defendant's speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002. Safety-Kleen's speculative assumptions

that it may lose customers and almost $2,000,000 in sales fail to satisfy Safety-Kleen's burden of proof, as Safety-Kleen presents no concrete evidence underlying any of its suppositions.

### C. Attorneys' fees

When "an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Id.* at 1000. But Safety-Kleen has not identified any applicable statutes that either require or permit an attorneys'-fees award. Safety-Kleen therefore may not include attorneys' fees in the alleged amount in controversy.

### D. Rescissionary relief

Lastly, Safety-Kleen argues that it can include the value of Otay Hydraulics's requested rescissionary relief in the amount-in-controversy calculation. Safety-Kleen contends that "there is a reasonable likelihood that the total gross revenues generated by Safety-Kleen on contracts with putative class members who have paid a 'fuel surchage' and/or a 'late payment fee'—each of which Plaintiff seeks to rescind in the Complaint—is far in excess of $5 million." (Not. of Removal ¶ 17.)

While Safety-Kleen asserts a conclusion, it does not any adduce any evidence to support its proposition, such as the value of its contracts. Again, Safety-Kleen cannot assume its way to $5,000,000.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

The Court finds that Safety-Kleen has not proved by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 as mandated by 28 U.S.C. § 1332(d)(2).  The Court therefore **REMANDS** this action to Los Angeles County Superior Court, case number BC487171.  *See* 28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**

April 25, 2013

_____
                          **OTIS D. WRIGHT, II
                   UNITED STATES DISTRICT JUDGE**