O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTAY HYDRAULICS, INC., <br><br> Plaintiff, <br> v. <br> SAFETY-KLEEN SYSTEMS, INC., <br><br> Defendant. | Case No. 2:12-cv-07357-ODW(VBKx) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [22]** |

On June 25, 2012, Plaintiff Otay Hydraulics, Inc. filed this putative class action against Defendant Safety-Kleen Systems, Inc. in California state court. Otay Hydraulics alleged that Safety-Kleen breached contracts with Safety-Kleen's California customers by allegedly charging unauthorized fuel surcharges and excessive late-payment fees. Defendants removed the action to this Court, and the Court remanded the action on its own motion for lack of jurisdiction. (ECF No. 9.) But on appeal, the Ninth Circuit vacated the order. (ECF No. 17.)

On April 15, 2013, Otay Hydraulics moved to remand the case, arguing that Safety-Kleen failed to establish that the amount in controversy exceeds $5,000,000 as required by 28 U.S.C. § 1332(d)(2)—an issue the Ninth Circuit declined to address on appeal. After carefully considering the Notice of Removal and supporting declarations, the Court agrees with Otay Hydraulics and therefore **REMANDS** this case to Los Angeles County Superior Court.

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *E.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a suit to federal court if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). But a "strong presumption" exists against removal; as a result, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (alterations omitted) (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006)). A removed action must be remanded to state court if the federal court lacks subject-matter jurisdiction, 28 U.S.C. § 1447(c), and the Court must resolve "all ambiguity in favor of remand to state court." *Hunter*, 582 F.3d at 1042; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Here, Safety-Kleen asserts that diversity jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there is minimum diversity and the amount in controversy exceeds $5,000,000. (Not. of Removal ¶ 1.) Safety-Kleen does not assert federal-question jurisdiction under 28 U.S.C. § 1331.

Plaintiffs are the masters of their complaints and may artfully plead their complaints to avoid federal jurisdiction. *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998–99 (9th Cir. 2007). When, as here, a plaintiff in a putative class action has not pleaded a specific amount in controversy, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *Abrego*, 443 F.3d at 683. In satisfying its burden, a defendant must "set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

### A. Damages

Safety-Kleen originally argued in its Notice of Removal that the total amount charged by Safety-Kleen to the putative class members during the four years preceding the filing of this action is $5,281,406. (Not. of Removal ¶ 13.) Safety-Kleen calculated this figure by adding together the amounts it charged—but did not necessarily collect—for fuel surcharges and late-payment fees, which are $3,527,781 and $1,753,625, respectively. (*Id.*)

In its Motion, Otay Hydraulics disagreed with this computation, arguing that its putative-class definition only includes persons and entities residing in California who actually *paid* fuel surcharges and late-payment fees. (Mot. 2; *see also* Compl. ¶ 9.) Otay Hydraulics pointed out that Safety-Kleen only collected $3,239,822 in fuel surcharges and $317,215 in late-payment fees, which results in a sum of $3,557,037.

But Safety-Kleen now alleges in its Opposition that the potential damages have grown to $3,820,460, as Safety-Kleen now includes additional fuel surcharges and late-payment fees collected since Otay Hydraulics commenced this action. Safety-Kleen also contends that "$609,000 *must* be added to the amount in controversy" as damages the putative class will incur as the lawsuit progresses. (Opp'n 14 (emphasis added and omitted).)

Though Safety-Kleen cites several unpublished cases for its ever-increasing-damages proposition, the amount in controversy must be assessed "at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted); *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1151 (D. Nev. 2004) ("[T]he amount in controversy is determined at the time of removal."). At the time of removal, Safety-Kleen had collected—as opposed to simply charged—$3,557,037 in questioned fees. Indeed, Safety-Kleen even admits that this figure "is not in dispute." (Opp'n 9.) That amount—well under the $5,000,000 jurisdictional threshold—accordingly represents the potential damages in controversy at this stage of the federal-jurisdiction analysis.

**B.     Injunctive relief**

Under the either-viewpoint rule, "the test for determining the amount in controversy is the pecuniary result to *either* party which the judgment would directly produce." *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (emphasis added).  If a defendant's cost of complying with an injuction would exceed the jurisdictional floor, that compliance cost represents the amount in controversy for jurisdiction purposes. *Rodgers v. Cent. Locating Serv., Ltd.*, 412 F. Supp. 2d 1171, 1180 (W.D. Wash. 2006).  This applies with equal force to CAFA's amount-in-controversy requirement: "according to the Report of the Senate Committee on the Judiciary on CAFA, the requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established 'either from the viewpoint of the plaintiff or the viewpoint of the defendant, *and regardless of the type of relief* sought (e.g., damages, injunctive relief, or declaratory relief).'" *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005) (emphasis added) (quoting S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 42 (Feb. 28, 2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40, 2005 WL 627977).

In spite of this authority, Safety-Kleen contends that it can add the costs that it would incur in complying with a potential injunction (i.e., *its* viewpoint) to Otay's damages (i.e., *Plaintiff's* viewpoint) to arrive at the requisite amount in controversy. Safety-Kleen claims three potential expenses: (1) $6,000 in administrative fees to reprogram Safety-Kleen's computer software to stop charging the questioned fees; (2) $8,000 to train its employees on modified business expenses; and (3) $1,402,173.77 in lower available cash due to not being able to collect late-payment fees.

But even Safety-Kleen acknowledges that "[i]n determining the amount in controversy under CAFA, the Court can look at the costs of a potential judgment *either* from the 'plaintiff's viewpoint' *or* the 'defendant's viewpoint.'"  (Opp'n 18 (emphasis added).)   Safety-Kleen thus properly admits that the Court may only

4

consider the amount in controversy from one party's perspective, that is, the putative class's damages *or* Safety-Kleen's compliance costs.  Safety-Kleen may not add its injunction-compliance costs to the putative class's damages to reach one mass figure that purports to satisfy the $5,000,000 threshold.  Safety-Kleen can only do what the rule's name implies: use either figure—not both—to meet the amount in controversy. *Rippee*, 408 F. Supp. 2d at 984.  Since the putative class's potential damages are much higher, Safety-Kleen's assumed compliance costs are irrelevant in calculating the amount in controversy.

## C.     Attorneys' fees

When "an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Id.* at 1000.  Safety-Kleen contends that Texas law governs Otay Hydraulics' contract with Defendant and thus identifies a Texas statute that permits an award of reasonable attorneys' fees in breach-of-contract cases. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8).  Safety-Kleen also acknowledges that 25 percent is the benchmark for attorneys'-fees awards in common-fund class actions, but nevertheless asks the Court to judicially notice higher fee requests by Plaintiff's counsel in other cases.

There are at least three problems with Safety-Kleen's arguments.  First, general contractual choice-of-law provisions "will only be construed as incorporating state substantive laws, [*not*] state procedural laws." *Stone & Webster, Inc. v. Baker Process, Inc.*, 210 F. Supp. 2d 1177, 1182–83 (S.D. Cal. 2002).  But Safety-Kleen cites an attorneys'-fees statute from the Texas civil procedure code without demonstrating that the Texas choice-of-law provision incorporates Texas procedural law.

Second, there is no indication that Texas law governs every contract between a potential class member and Safety-Kleen.  At best, Safety-Kleen's statutory citation is cabined to its case vis-à-vis Otay Hydraulics.  Finally, even assuming that Plaintiff's

counsel would be entitled to a lofty 33 percent of the putative class's damages, that amount would only result in an additional $1,173,822.21 in controversy ($3,557,037 * 0.33). The total amount in controversy is therefore at most $4,730,859.21—$269,140.79 below the jurisdictional threshold.

**D.     Rescissionary relief**

Lastly, Safety-Kleen argues that it can include the value of Otay Hydraulics's requested rescissionary relief in the amount-in-controversy calculation. Safety-Kleen contends that "there is a reasonable likelihood that the total gross revenues generated by Safety-Kleen on contracts with putative class members who have paid a 'fuel surcharge' and/or a 'late payment fee'—each of which Plaintiff seeks to rescind in the Complaint—is far in excess of $5 million." (Not. of Removal ¶ 17.)

While Safety-Kleen asserts a conclusion, it does not any adduce any evidence to support its proposition, such as the value of its contracts. Safety-Kleen cannot assume its way to $5,000,000.

The Court finds that Safety-Kleen has not proved by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 as mandated by 28 U.S.C. § 1332(d)(2). The Court therefore **REMANDS** this action to Los Angeles County Superior Court, case number BC487171. *See* 28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**

May 6, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

```
cc:order, docket, remand letter to
Los Angeles Superior Court, No. BC 487171
```